## DANIEL J. DOHAN *v.* J. M. WILSON.

A disease making its appearance within fifteen days after the sale, is presumed to have existed on the day of sale, the slave not having been in the State eight months.

It is incumbent on defendant to rebut this presumption.

APPEAL from the Second District Court of New Orleans, *Morgan, J.* *Chilton & Perkins*, for plaintiff and appellee. *Moïse & Randolph*, for defendant and appellant.

MERRICK, C. J. This is an action brought to recover the price of two slaves sold by the defendant to the plaintiff, alleged to have died of the cholera.

The negro women were delivered under the sale, on the evening of the 21st of January, 1854, to the plaintiff, and taken to his plantation in the Parish of Tensas, where they were received on the 23d, apparently in good health. On the

45

DOHAN
v
WILSON

25th, they were employed in picking cotton, and on the 26th, they were taken violently ill with the cholera, and subsequently died. On the 30th, the disease made its appearance among the other negroes on the place, and the first one attacked died the next day after being taken. Eight or nine other cases immediately followed, and the disease disappeared from the plantation after the negroes had been made to abandon their houses, and disperse and encamp in the woods and other parts of the plantation.

The disease having made its appearance in fifteen days after the sale, is presumed to have existed on the day of sale, the slaves not having been eight months in the State.

This presumption defendant has attempted to rebut by proving that the slaves had not been sick for some time previous to the sale; that they walked the day of sale a mile to the steamboat landing; that they were apparently well and in fine spirits when taken on board of the boat; that there had been no cholera in the slave yard of defendant from the 28th November, 1853, to the 28th February, 1854; that the slaves appeared to be well on the 23d, and even picked cotton on the 25th of January. Defendant contends that it is thus made probable that the sickness of the slaves originated during their removal, or after they arrived at their new home.

In this state of the case, however, it must be observed, it is not shown that cholera was not prevailing to some extent in the city, and the defendant's physician, who visited the establishment almost every day, while he says positively, there was no cholera there in November and December, 1853, will not so state as to January, and only gives it as his impression that there was none. Defendant's clerk, and the owner of one of the slaves are, however, positive that there was no cholera in the slave yard in January.

The plaintiff has not contented himself with relying on the presumption of law in his favor. He has shown that there was no cholera in the Parish of Tensas at the time of the arrival of these negroes, and that there had not been any since 1851, and the physician and overseer give it as their opinion, that it was brought there by these negroes from New Orleans.

One of the physicians called as a witness by defendant, was the one having charge of the slave yard, he is of the opinion that cholera does not lie dormant in the system so long as three days; the other, Dr. Moss, will not undertake to say that it may not exist in a latent state for eight days.

Now the proof makes it sufficiently certain, that these slaves did not take the cholera in the Parish of Tensas, for there was no cholera there, and had been none since 1851, and when it had prevailed as an epidemic on a certain plantation in 1851, it is shown how it was carried there by the removal of negroes from a plantation in another part of the State, where it was prevailing.

Then, did the negroes take the disease on the way? If it be assumed that they did, it destroys defendant's theory, because it shows that the disease was in a latent condition in the systems of the slaves from the 22d of January to the 26th, a period of four days; for the slaves had the same healthy appearance when received in Tensas, as when delivered in New Orleans. If the disease existed in a latent condition at one period, it might have also at the other.

It seems, therefore, that it was upon the defendant to show that there was cholera prevailing on the steamboat, or at some point through which the slaves passed, where they might have taken the disease, particularly as it is shown by defendant's witness that every winter and spring, there were sporadic cases of

Dohan<br>v.<br>Wilson.

cholera in the city. The fact that another slave of plaintiff was taken sick on the 30th and died next day, does not disprove the presumption of law. He had then been exposed to the disease, perhaps for four days.

It is urged that, if the defendant had made it possible that the slaves did not have the cholera at the time of the sale, and that if anything more than a probability is required to overcome the presumption created by the statute, it never can be overcome.

This may be true as to cholera, until medical men have a more certain knowledge of the causes and origin of the disease. The fault lies in the statute, and the nature of the proof in this case. The defendant has not rebutted the presumption, fortified by facts as it is, proof amounting to a legal certainty. A mere probability is not sufficient. See *Landry* v. *Peterson,* 4 An. 96.

We cannot, therefore, say that the District Judge erred in his conclusions, and the loss must fall upon defendant under the statute.

Judgment affirmed.